THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIRPLANE MANUFACTURING
PILOTS ASSOCIATION,

              Plaintiff,

    v.

THE BOEING COMPANY,

              Defendant.

NO.  C09-0772 MJP

DEFENDANT'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY ...............................................................................1

II.     SUMMARY OF FACTS .............................................................................................1

        A.      The Parties ........................................................................................................1

        B.      The Collective Bargaining Agreement .................................................................2

        C.      The AMPA Unit and Instructor Pilot Job ............................................................3

        D.      The Surplus Announcement.................................................................................4

        E.      The "Grievance" and the Union's Sham Efforts to Pursue Arbitration...................5

III.    ARGUMENT ............................................................................................................6

        A.      Legal Framework:  Norris-LaGuardia and the Arbitration Exceptions .................6

        B.      Expedited Arbitration Is Not an Available Remedy Under Applicable Law ..........7

        C.      Even if Expedited Arbitration Was an Available Remedy, the Union Has
                Failed to Satisfy the Criteria for Injunctive Relief...................................................11

                1.      The Union Is Not Entitled to an Injunction Compelling Arbitration
                        Because Boeing Has Not Unequivocally Refused to Arbitrate ................11

                2.      The Union Has Failed to Satisfy the Equitable Criteria for
                        Injunctive Relief.......................................................................................11

IV.     CONCLUSION........................................................................................................19

ATTACHMENT – ARTICLE 7

TABLE OF CONTENTS (No. C09-0772 MJP) – i

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

03002-1565/LEGAL16341127.1

## I.     INTRODUCTION AND SUMMARY

Defendant The Boeing Company ("Boeing" or the "Company") submits this memorandum in opposition to plaintiff Airplane Manufacturing Pilots Association's ("AMPA" or the "Union") Application for Temporary Restraining Order Compelling Expedited Arbitration (Dkt. 5) and its Memorandum in Support of that application (Dkt. 6).

On May 22, 2009, Boeing notified ten AMPA-represented pilots that they may be laid off effective July 24, 2009.  Under Article 7, § 2(b) of the parties' 2009 collective bargaining agreement, any of those employees who are ultimately laid off may challenge that action by filing a written grievance "within ten (10) workdays after the date of such layoff."  The Union, however, is not content to follow the contractual grievance and arbitration process.  Instead, it has sought to short-circuit that process by means of an anticipatory grievance, which challenges the *notices* in advance of any actual layoff.  As part of this gambit, the Union has filed this lawsuit seeking injunctive relief under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.  Specifically, it asks the Court to fashion an entirely different grievance process and to order expedited arbitration (which is not authorized by the labor contract) of its anticipatory grievance.

The Court should deny the Union's motion for two independently sufficient reasons.  First, an extra-contractual expedited arbitration process is not authorized by Section 301 and is prohibited by the Norris-LaGuardia Act, 29 U.S.C. § 101.  Second, even if expedited arbitration was an appropriate remedy, the Union has failed to satisfy the criteria for injunctive relief.

## II.     SUMMARY OF FACTS

### A.     The Parties

Boeing is a an aerospace engineering and manufacturing company with worldwide operations.  Of the various Boeing operating groups, Boeing Commercial Airplanes ("BCA") is the largest player in the Pacific Northwest.  Declaration of Stephan Mueller ("Mueller Decl."), ¶ 2.

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 1

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

Boeing employs 242 pilots, including 127 based in the Puget Sound region.  Declaration of Kelly B. Wright ("Wright Decl."), ¶ 5.  AMPA represents a unit that includes 50 of these pilots (commonly referred to as "instructor pilots" or "AMPA pilots"), all of whom work for BCA and are based at Boeing's Longacres site in Renton, Washington.  *Id.* ¶ 2.

**B.      The Collective Bargaining Agreement**

AMPA's grievance arises under a collective bargaining agreement ("CBA") that was negotiated quite recently and was executed on March 19, 2009.  Declaration of Peter B. Peterson ("Peterson Decl."), ¶ 2 & Ex. B; Declaration of Don Canova (Dkt. 8, "Canova Decl."), Ex. A. The Union's grievance implicates several provisions of the CBA, but the present motion turns on one:  Article 7, the grievance and arbitration procedure.  The terms of Article 7 are central to this dispute, and a copy of the complete article is attached for the convenience of the Court.  That article provides that grievances arising between AMPA and Boeing "shall be settled according to" Article 7's procedures and that those procedures (supplemented by remedies provided by law) "are the sole and exclusive means for settling any dispute between the employees and/or the Union and the Company dealing with the interpretation or application of terms of this Agreement."  Peterson Decl. Ex. B, art. 7, § 1.  Section 2 of those procedures specifically addresses layoff grievances.  It provides, in part, as follows:

> An employee shall have the right to appeal a layoff . . . by filing a written grievance through the Union, beginning at Step 2, with the designated Company Representative within ten (10) workdays after the date of such layoff . . . .

*Id.* § 2(b).  Section 3 authorizes Union grievances under limited circumstances.  Like Step 2 employee grievances, these must be submitted in writing to Boeing's "designated representative" within ten days following "the occurrence of the event giving rise to the grievance."  *Id.* § 3. Employee and Union grievances that are not resolved at earlier stages in the grievance process are subject to final and binding arbitration in accordance with detailed procedures set forth in Article 7.  *Id.* §§ 4-6.  The arbitration procedure in the CBA is designed to ensure that final

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 2

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

arbitration decisions are fully informed, carefully reasoned, and fair.  Declaration of Amy L. Kelly ("Kelly Decl."), ¶ 2.  For example, Section 4 provides for a panel of permanent arbitrators to be selected by the parties, a verbatim transcript of the arbitration hearing, written post-hearing briefs, and reasoned written decisions.  *Id.*

Boeing and AMPA negotiated the current CBA in late January 2009 and early February 2009.  Peterson Decl. ¶ 5.  During those negotiations, AMPA did not propose any substantive changes to Article 7's grievance and arbitration procedures.  *Id.*  In particular, AMPA did not propose the adoption of an expedited arbitration procedure.  *Id.*  Rather, it agreed to continue the existing contractual procedure as the "exclusive means for settling disputes" dealing with the interpretation or application of the CBA.  Peterson Decl. Ex. B, art. 7, § 1.

**C.    The AMPA Unit and Instructor Pilot Job**

There are 50 active employees in the AMPA unit, all based at Boeing's Longacres site in Renton, Washington.  Wright Decl. ¶ 2.  All of the instructor pilots represented by AMPA work for Alteon, a business unit of BCA's Commercial Airplane Services unit.  *Id.* ¶¶ 1-2.  Alteon provides training services to BCA customers.  *Id.* ¶ 1.  Alteon has simulator training facilities at locations throughout the world, and instructor pilots are deployed worldwide.  Declaration of Suzanna Darcy-Hennemann ("Darcy-Hennemann Decl."), ¶ 1.  AMPA pilots can be deployed globally for up to 120 days per year.  *Id.* ¶ 2.  Thus, AMPA pilots' jobs can require them to travel thousands of miles to their job site and can require extended periods away from home.  *Id.*

Alteon also employs simulator-only flight instructors ("simulator instructors") at the Longacres site.  *Id.* ¶ 6.  Since October 2008, Boeing has reduced the simulator instructor workforce (including both Boeing employees and non-Boeing contractor personnel) from 64 to 45, and five more simulator instructor positions (including the last remaining contractor personnel) will be eliminated effective July 24, 2009, for a total reduction of 24.  *Id.*

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 3

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

**D.    The Surplus Announcement**

Commercial aircraft manufacture is a notoriously cyclical business.  This is especially true of BCA's business, which is highly dependent on general economic conditions and new large-airplane developmental programs.  Mueller Decl. ¶ 3.  Consequently, periodic mass layoffs are an expected fact of life for almost all Boeing employees, particularly early in their Boeing careers, when their seniority is relatively low.  *Id.* ¶ 3, Ex. B.

Boeing follows a consistent process in planning for and implementing layoffs.  This process begins when the employing business organization declares a "surplus" in a particular job classification, which specifies the number of positions to be reduced.  *Id.* ¶ 4.  Boeing identifies which individuals in those jobs will be impacted per the terms of their CBAs.  *Id.*  In accordance with the Worker Adjustment Retraining and Notification ("WARN") Act, 29 U.S.C. §§ 2101-2109, Boeing then issues 60-day advance notices to employees identified for layoff, specifying the scheduled layoff date, which it reconfirms 14 days before the layoff date and again on the layoff date itself.  *Id.*  Historically, the number of affected employees declines at each stage in this process.  *Id.*  As a result, only a fraction of employees who receive WARN notices are ever laid off.  *Id.* ¶ 4, Ex. B.

On May 8, 2009, the Chief Pilot for the AMPA-represented pilots notified AMPA leadership that BCA had declared a surplus in the instructor pilot job category and would be issuing WARN notices to AMPA pilots.  Peterson Decl. ¶ 4.  The Agreement generally requires Boeing to lay off AMPA pilots in reverse seniority order.  Wright Decl. ¶ 4; Canova Decl. Ex. A, art. 3.  Accordingly, the ten AMPA pilots with the lowest seniority were identified and, on May 22, 2009, they were notified that they were subject to layoff effective July 24, 2009.  Wright Decl. ¶ 4.  The affected pilots are all recent Boeing hires—all had less than two years of Boeing service.  *Id.*

Boeing's practice is to use the 60-day WARN period to make every reasonable effort to find alternative placements for surplussed employees prior to their layoff dates.  Due to this

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 4

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

practice and other intervening developments, only a fraction of employees who receive WARN notices are ever laid off. For example, in 2004, 733 BCA employees received 60-day WARN notices, but of this group only 124 were ultimately laid off. The other 609 (83% of the total) were not. Mueller Decl. ¶ 4, Ex. B.

Since issuing WARN notices, Boeing management and Human Resources representatives have met with each of the ten AMPA pilots to discuss their options and plans, and to explore alternative placement opportunities. Darcy-Hennemann Decl. ¶¶ 4-5. As a result of those efforts, one of the ten has already been placed in another Boeing assignment. *Id.* Prospects are good that others will also be placed prior to July 24. *Id.* ¶¶ 5-6. In addition, WARN notices for two AMPA pilots will be extended—and may eventually be canceled—because two other pilots who are commencing military leave in July, and yet another AMPA pilot who received a WARN notice has informed Boeing that he is returning to active military service. *Id.* ¶¶ 6-7.

No AMPA pilots have been laid off. It remains likely that some of the original ten will be laid off on July 24, but how many and whom cannot be determined at this time. Any pilot who is laid off on that date will then have ten workdays—until August 7, 2009—to file a grievance challenging that decision. Peterson Decl. Ex. B, art. 7, § 2(b).

## E.    The "Grievance" and the Union's Sham Efforts to Pursue Arbitration

On May 18, 2009, AMPA counsel Dmitri Iglitzen sent a letter to a Boeing lawyer, Joan Clarke, purporting to grieve the threatened layoffs on behalf of AMPA. Declaration of Dmitri Iglitzen (Dkt. 7), Ex. 1. At the time, no WARN notices had been issued, and any potential layoffs were still months off, so the grievance was entirely anticipatory. Ms. Clarke was out of the office at the time; upon her return, she replied to Mr. Iglitzen that the grievance was premature, but offered that if the Union wanted to pursue the issue of the WARN notices (which had been issued in the interim), the Union's president, Don Canova, should contact Mr. Peterson to schedule a meeting. *Id.* Ex. 2. Five days later, on June 2, Mr. Iglitzen sent Ms. Clarke another missive demanding expedited arbitration. *Id.* Ex. 3. Ms. Clarke responded the next day, noting

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 5

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

that expedited arbitration is not available under the CBA, but offering to discuss the matter. *Id.* Ex. 4. Evidently, Mr. Iglitzen had no interest in discussing the matter, as that same afternoon he sent Ms. Clarke a copy of the summons and complaint in this lawsuit.

As noted, Mr. Peterson is the designated Company Representative for the AMPA bargaining unit. Peterson Decl. ¶ 2. As such, he is the designated representative to receive all Step 2 employee grievances and all Union grievances under Article 7 of the parties' CBA. *Id.* ¶ 2, Ex. B. The Union is aware of Mr. Peterson's role and responsibilities, as he negotiated the current CBA, and AMPA has contacted him directly to submit and resolve Union grievances in the past. *Id.* Exs. C, D.

To date, the Union still has not submitted a grievance to Mr. Peterson challenging the May 22, 2009, WARN notices or the potential layoffs referred to in those notices. *Id.* ¶ 3. Rather, Mr. Iglitzen's demand letters completely bypassed the contractual grievance process. Nonetheless, Mr. Peterson has invited AMPA president Mr. Canova to meet and discuss the grievance and related arbitration procedural issues. *Id.* ¶ 3, Ex. E. Mr. Peterson has also proposed that the parties proceed to negotiate the composition of the permanent panel of two arbitrators, pursuant to Article 7, § 4, of the CBA, in order to facilitate the timely arbitration of the pending grievance. *Id.* ¶ 6. To date, AMPA has not responded to Mr. Peterson's invitation. *Id.* ¶¶ 3, 6.

## III.   ARGUMENT

### A.   Legal Framework:  Norris-LaGuardia and the Arbitration Exceptions

The present case requires the Court to consider the interplay between Section 301 of the Labor-Management Relations Act ("Section 301") and the anti-injunction proscription of the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115 ("Norris-LaGuardia"). Norris-LaGuardia generally prohibits federal courts from issuing injunctions in labor disputes. 29 U.S.C. § 101. Nonetheless, the Supreme Court has recognized two limited exceptions in the case of Section 301 injunctions in support of contractual grievance and arbitration processes.

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 6

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

First, the federal courts have recognized an exception to the normal application of Norris-LaGuardia for suits seeking specific performance of a CBA's grievance arbitration provisions. *Textile Workers Union of Am. v. Lincoln Mills of Alabama*, 353 U.S. 448, 457-58 (1957). Second, subject to certain strict conditions, a federal court in a Section 301 case may issue a temporary injunction to preserve the status quo pending arbitration. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 254 (1970). Under *Boys Market,* a court may enjoin a strike or other concerted activity arising out of a dispute that both parties are contractually bound to arbitrate, and order the parties to proceed to arbitration. *Id.* By contrast, a "reverse *Boys Markets"* case is one in which "an employer makes changes in areas which are subject to the grievance arbitration procedure, and the union seeks to enjoin the employer from making the changes until the grievance is resolved through arbitration." *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 632 (9th Cir. 1996).

**B.    Expedited Arbitration Is Not an Available Remedy Under Applicable Law**

The Union here does not seek *either* specific performance of the contractual grievance procedure *or* a reverse *Boys Market* status quo injunction. Rather, it seeks an injunction that would impose an *extra*-contractual expedited arbitration process. This relief is not authorized by Section 301 and is prohibited by Norris-LaGuardia. 29 U.S.C. § 101.

> It is a "cardinal principle" of federal labor law that, with few exceptions:
>
> [T]he contents of collective bargaining agreements are left to the discretion and negotiating strength of the parties. . . . This includes which method, if any, they will use to resolve disputes that arise during the course of their collective bargaining agreement. . . .  [I]t is up to the negotiating parties whether or not to agree to have a formal method for settling their labor/management differences, and it is up to them, *and only them*, to determine what shall be the procedure.

*Otis Elevator Co. v. Int'l Union of Elevator Constructors, Local 4*, 408 F.3d 1, 8 (1st Cir. 2005) (emphasis added) (*citing* 29 U.S.C. §§ 158(a)(5), (b)(3), (d)). In a Section 301 action to compel

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 7

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

arbitration, if all preconditions for injunctive relief are satisfied, the court can enforce the agreed

grievance and arbitration provisions of the parties' CBA.  *Id.*  However, the courts *cannot* require

the parties "to submit to an arbitration regime different than what was contractually bargained

for." *Id.* at 9.  *See also Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local No. 71*

*v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1343 (4th Cir. 1978) (affirming district court decision

to refuse to order expedited arbitration based on terms of parties' collective bargaining agreement

which had "built-in potential for delay"—court properly refused to "re-write the terms" of the

parties' agreement, "otherwise, the employer would be deprived of his bargain and the policy of

the labor statutes to implement private resolution of disputes in a manner agreed upon would

seriously suffer") (*quoting Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 407

(1976)).  As the First Circuit Court of Appeals observed in *Otis*:

> Only the procedures of the Agreement voluntarily agreed upon in
> good faith by the parties could be enforced by the court.  It was
> beyond the district court's power to go further under the
> circumstances, and, in doing so, it contravened the policies
> promoted by Boys Markets.  *The equitable powers of a court are*
> *not a warrant for reforming the conditions of a collective*
> *bargaining agreement.*

*Otis*, 408 F.3d at 9 (emphasis added).

The parties' current CBA includes a detailed arbitration procedure that: (1) requires the

use of arbitrators selected from a mutually agreed-upon panel or specific agreement, (2) provides

for the preparation of a verbatim transcript of the arbitration proceedings, (3) gives the parties the

right to prepare and submit written post-hearing briefs, and (4) gives the arbitrator sufficient time

(at least 60 days) to evaluate the evidence and written briefs and to prepare a fully informed and

thoughtful written decision.  Each of these provisions was negotiated by the parties and

reconfirmed a mere three months ago.  Together, they embody the parties' desire to have fully

informed, carefully reasoned, and fair decisions issued by a mutually agreeable arbitrator.  From

Boeing's perspective, each of these elements is essential, as a significant percentage of

grievances that go to arbitration involve potentially precedent-setting contract interpretation

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 8

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

disputes.  Kelly Decl. ¶ 2.  Arbitration decisions on such matters flesh out the operation and effect of contract language that Boeing and union representatives refer to and apply on an ongoing basis, so such decisions inform Boeing's business decisions, labor disputes, and collective bargaining for years—and sometime decades—after they are issued.  *Id.*

The parties could have included an expedited arbitration clause in their agreement, but they chose not to.  The Union never even proposed such a clause.  Peterson Decl. ¶ 5.  To order expedited arbitration now would eviscerate the parties' bargained-for arbitration procedure. Under the American Arbitration Association's ("AAA") rules for expedited arbitration (proposed by the Union): (1) the parties have no input into the selection of the arbitrator; (2) the proceedings are not recorded via stenographic record; (3) the parties are not permitted to submit post-hearing briefs; (4) the arbitrator only has seven days within which to render a decision; and (5) decisions are not required to include any reasoning, and only "summary" opinions are even *permitted*.  Kelly Decl. ¶ 5, Ex. A.  The AAA's expedited arbitration procedures run completely counter to the parties' negotiated procedures.  They are only intended for uncomplicated grievances, and—by their own terms—they should only apply when the parties have specifically *agreed* to use them.  Kelly Decl. ¶ 4, Ex. A.  Here, the parties have made no such agreement.

The Court should not interpose these extra-contractual procedures in place of those agreed to in the parties' negotiated CBA.  Expedited arbitration would be particularly inappropriate here because Mr. Iglitzen's grievance raises fundamental questions about AMPA jurisdiction, management's right to assign work, the rights of non-AMPA employees, and related contract-interpretation questions.  Kelly Decl. ¶ 6.  Resolution of these issues will likely require extensive testimony and documentary evidence about the genesis and evolution of the AMPA unit, its collective bargaining history over the years, the effect of intervening operational and organizational changes, and areas of overlap between AMPA-represented pilots and several other categories of Boeing pilots, among other topics.  *Id.*  The final decision will likely have a lasting, precedential impact on the AMPA unit and future AMPA grievances, Boeing's customer-training

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 9

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

operations, and the employment rights of non-AMPA employees. *Id.* This is, in short, *precisely* the kind of case that should be decided by a highly qualified arbitrator agreed to by the parties based on a complete factual record and written briefs. *Id.* It is also a case where a thoroughly reasoned written decision is essential. *Id.*

In support of its argument that expedited arbitration is an appropriate remedy, the Union relies on *American Postal Workers Union v. U.S. Postal Service*, 372 F. Supp. 2d 83 (D.D.C. 2005). With regard to its ruling on expedited arbitration, the *USPS* decision was incompletely reasoned and ultimately incorrect, but in any event is easily distinguishable from the present case. In that case, USPS refused to consider certain union employees for voluntary early retirement and the union sought to grieve USPS's refusal. Under the parties' arbitration agreement, a decision would not be rendered until after USPS's authority to offer voluntary early retirement had expired. *Id.* at 90-91. On these facts, the court concluded that an order of expedited arbitration was necessary because, even if the union prevailed in a non-expedited arbitration, USPS would not be able to offer voluntary early retirement if ordered to do so—the union would have *no* remedy. The court's decision does not address or include any authority regarding the legality or propriety of a court imposing an extra-contractual arbitration process in place of the parties' negotiated CBA. Rather, the court pushed the bounds of its authority to avoid an unusually harsh result in a case that presented unique facts.

The present case is clearly distinguishable. It is undisputed that, at the end of the parties' agreed-upon arbitration process, Boeing would be fully capable of complying with an award of backpay and reinstatement if the arbitrator finds the Company has violated the parties' contract. The arbitration process would not be "frustrated" by this result. As such, the Court should defer to the specific and comprehensive arbitration procedures AMPA agreed to in the CBA. An order compelling extra-contractual expedited arbitration is unauthorized and inappropriate under the facts of this case. The Union's request should be denied.

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

**C.     Even if Expedited Arbitration Was an Available Remedy, the Union Has Failed to Satisfy the Criteria for Injunctive Relief**

**1.     The Union Is Not Entitled to an Injunction Compelling Arbitration Because Boeing Has Not Unequivocally Refused to Arbitrate**

A cause of action to compel arbitration under Section 301 does not arise until "a party unequivocally refuses a demand to arbitrate." *Local Joint Executive Bd. of Las Vegas, Bartenders Union Local 165, Culinary Workers' Local Union No. 226 v. Exber Inc.*, 994 F.2d 674, 675 (9th Cir. 1993) (*quoting Federation of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.,* 736 F.2d 896, 902 (3rd Cir. 1984)).  Boeing has not unequivocally refused a demand to arbitrate.  How could it?  The Union has never made a demand to arbitrate in accordance with the parties' CBA.  A proper demand to arbitrate should have been communicated to Boeing's designated Company Representative, Mr. Peterson.  Peterson Decl. ¶¶ 2-3, Ex. B.  Instead of following the parties' agreed-upon procedure, the Union chose to bypass Mr. Peterson and make a "demand" for extra-contractual expedited arbitration to a Boeing attorney who is not and has never been the Company representative for purposes of AMPA grievances.

By opposing AMPA's request for expedited arbitration, which would violate multiple provisions of the parties' CBA, Boeing is not refusing to arbitrate the grievance.  Far from it; Boeing is prepared to arbitrate any Union grievance *in accordance with the parties' agreed-upon arbitration procedures*.  Because Boeing remains fully willing to arbitrate AMPA grievances in accordance with the CBA, the Union's action to compel arbitration is premature and should be denied.

**2.     The Union Has Failed to Satisfy the Equitable Criteria for Injunctive Relief**

Even if expedited arbitration was an appropriate remedy, the Union has failed to establish that it is entitled to injunctive relief under ordinary principles of equity.  In determining whether the Union is entitled to equitable relief:

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 11

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

> [T]he district court must, of course, consider whether issuance of
> an injunction would be warranted under ordinary principles of
> equity—and whether breaches are occurring and will continue, or
> have been threatened and will be committed; whether they have
> caused or will cause irreparable injury to the [party seeking the
> injunction]; and whether [the party seeking the injunction] will
> suffer more from the denial of an injunction than will the [other
> party] from its issuance.

*Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 254 (1970) (*quoting with*

*approval from the dissent in Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228 (1962)).

In the Ninth Circuit, the standards for injunctive relief are well established:

> To obtain a preliminary injunction, a party must show either
> (1) the likelihood of success on the merits and the possibility of
> irreparable injury, or (2) the existence of serious questions going
> to the merits and the balance of hardships tipping in its favor . . . .
> These two formulations represent two points on a sliding scale on
> which the required degree of irreparable harm increases as the
> probability of success decreases. . . .  Under any formulation of the
> test, the plaintiff must demonstrate that there exists a significant
> threat of irreparable injury.

*Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985) (internal

quotation marks and citations omitted).  The public interest is also to be considered.  *Los Angeles*

*Mem'l Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  As

is readily apparent from the facts before the Court, the Union fails to satisfy these standards.

### a.   The Union Has Not Demonstrated a Likelihood of Success on the Merits

The Union has failed to demonstrate a likelihood of success on the merits sufficient to

support its request for injunctive relief.  Of course, the ultimate merits question (whether AMPA

pilots will be laid off as a "result" of simulator instructor hiring) is a question for the arbitrator

and not for the Court.  However, to succeed on its claim for injunctive relief, AMPA must

establish that it has at least a facially colorable claim.  *Sports Form, Inc. v. United Press Int'l,*

*Inc.*, 686 F.2d 750, 753 (9th Cir. 1982) ("No chance of success at all will not do.").  AMPA

cannot meet this burden.  It is undisputed that *if* the AMPA pilots are eventually laid off, those

layoffs will be the result of BCA *downsizing,* and the pilots will not be replaced by simulator

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 12

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

instructors.  Mueller Decl. ¶ 5; Wright Decl. ¶ 3.  Indeed, simulator instructors have taken a

much deeper hit in the current round of downsizing than the AMPA pilots.  Wright Decl. ¶ 6.

The Union simply cannot show the requisite causation.

Moreover, before an arbitrator could even consider the merits of the claim, he or she

would need to decide whether the AMPA grievance is premature and procedurally improper.

This answer will almost certainly be "yes" because Article 7 specifically provides that layoff

grievances are *employee* grievances, not Union grievances, and are only ripe after the layoff

occurs.  *See* Peterson Decl. Ex. B, art. 7.  The Union has failed to demonstrate a likelihood of

success on the merits sufficient to support its request for injunctive relief.

### b.    The Union Will Not Suffer Irreparable Injury

The speculative harms identified by the Union in its members' declarations do not

demonstrate "irreparable injury" sufficient to justify injunctive relief.  In the context of a party

seeking equitable relief pending arbitration of a labor dispute,

> [i]rreparable harm is injury so great that an arbitrator's award, if
> forthcoming, would be inadequate to fully recompense the injured
> party.  It renders the award an "empty victory," and thereby
> undermines the integrity of the arbitral process . . . .  Because it is
> this very "frustration or vitiation" of arbitration which justified the
> "narrow exception" to the anti-injunction provision of the Norris-
> LaGuardia Act, the irreparability of the injury suffered by the
> union has in many cases become virtually the sole inquiry in those
> cases where injunctive relief is sought against an employer.

*Aluminum Workers Int'l Union, Local 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 443

(6th Cir. 1982) (internal citations omitted).  Under the "empty victory" standard, injunctive relief

is only appropriate where the injury sustained would be so irreparable that "any arbitral award in

favor of the union would substantially fail to undo the harm occasioned" by the lack of equitable

relief.  *Local 921*, 89 F.3d at 634 (*quoting Niagara Hooker Employees Union v. Occidental

Chem. Corp.*, 935 F.2d 1370 (2d Cir. 1991)).  A decision does not become an "empty victory"

merely because of "the inability of an arbitrator to completely restore the status quo ante or . . .

the existence of some interim damage that is irremediable." *Id.; see also Columbia Local Am.*

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 13

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

*Postal Workers Union v. Bolger*, 621 F.2d 615, 618 (4th Cir. 1980) ("That there may be some measure of difficulty in devising appropriate compensatory relief . . . does not make the process a hollow formality"—request for injunction denied).

Where the threatened injury is loss of employment, it is axiomatic that the temporary loss of income or difficulty in finding a new job will not justify preliminary injunctive relief. *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) ("The loss of a job is quintessentially reparable by money damages"); *Aluminum Workers*, 696 F.2d at 443; *Morgan v. Fletcher*, 518 F.2d 236, 238-40 (5th Cir. 1975) (availability of full backpay negated irreparable injury, despite loss of substantial income, loss of medical benefits, and risk of foreclosure); *Int'l Brotherhood of Electrical Workers, Local 1900 v. Potomac Elec. Power Co.*, 634 F. Supp. 642, 644 (D.D.C. 1986) (availability of backpay and reinstatement negated need and justification for preliminary relief to suspend discharge).  As the Supreme Court has observed:

> [A]n insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual.

*Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).

Equitable relief in this context is only appropriate where the employer would be unable to fully comply with an order for backpay and reinstatement, thus resulting in a *permanent* loss of employment and rendering the union's victory an "empty victory."  This factual scenario appears in several of the cases cited by the Union.  Those cases involve major operational changes, business sales, or plant closures—employer actions that would be substantially difficult, if not impossible, to reverse at a later date in order to comply with an arbitrator's award of backpay and reinstatement.  *See Brotherhood of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 529 (1960) (employer action involved substantial restructuring of train operations,

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 14

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

elimination of two stations, and relocation of employees at remaining three stations); *Local 921*, 89 F.3d at 634-35 (employer action involved consolidation of delivery routes and dismantling of youth carrier system, recreation of which would be "extremely impracticable"); *Local Lodge 1266 v. Panoramic Corp.*, 668 F.2d 276, 286-87 (7th Cir. 1981) (injunction restrained employer from selling off corporate assets to purchaser with no duty to rehire employees, thereby protecting remedy of reinstatement); *Lever Brothers Co. v. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 117, 122 (4th Cir. 1976) (employer action involved relocating its plant from Maryland to Indiana).

The facts of the present case do not implicate the "empty victory" standard because there is no evidence that Boeing could not fully comply with an arbitrator's order awarding backpay and reinstatement. The facts of this case are closer to those in *Aluminum Workers*, cited on page 5 of the Union's brief. 696 F.2d 437 (1982). That case involved a reorganization that resulted in the elimination of sixteen jobs. *Id.* at 439-440. The union sought an injunction to reinstate the sixteen employees and return things to the *status quo* pending arbitration. *Id.* In support of its application for injunctive relief, the union argued that loss of employment constituted "irreparable harm because awards of backpay and reinstatement . . . cannot fully compensate employees for the repossessions, foreclosures and injury to credit stature which could accompany unemployment." *Id.* at 443. The trial court granted the union's motion, but the Court of Appeals reversed, holding that, "absent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, . . . loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief." *Id.* In support of its decision, the court noted that there was no evidence to suggest that the employer "would be unable to comply fully with an order for backpay and reinstatement in the event the arbitrator found the company in violation of the agreement." *Id.* at 444. As to the union's alleged "irreparable injury" consisting of possible "repossessions,

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 15

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

foreclosures and injury to credit status," the court explained that "[w]hile these are undeniably hardships which may be attendant upon unemployment, they do not represent the type of harm that, by its occurrence, threatens the integrity of the arbitral process." *Id.*

AMPA and its members, like those in *Aluminum Workers*, base their "irreparable harm" argument on *potential* consequences flowing from a *potential* loss of income. *See* Declarations of William Reed, Jeffrey Chapman, Matthew Coleman, Diego Wendt, Ian Sullivan, Richard Brown, Harry Westcott, and Richard Denton in Support of Plaintiff's Motion for a Temporary Restraining Order (Dkts. 9-16) (potential harms listed include: repossession, foreclosure, selling home, relocating, taking a job overseas, and removing children from private school). The potential harms alleged by the Union do not rise to the level of "irreparable harm." Rather, the alleged harms, if sustained, will flow from "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself." *Sampson*, 415 U.S. at 92 n.68. These are not the types of harms that would "threaten the integrity of the arbitral process." *Aluminum Workers*, 696 F.2d at 444.

The cases cited by the Union in support of its assertion that the potential harms naturally flowing from unemployment constitute "irreparable harm" are clearly distinguishable. *See Oil, Chem. & Atomic Workers Int'l Union, Local 2-286 v. Amoco Oil Co.*, 885 F.2d 697, 705 n.12 (10th Cir. 1989) (irreparable harm justifying injunction would flow from humiliation and stigmatization attending drug testing, *not* termination of employment); *Am. Fed'n of Gov't Employees v. U.S.*, 104 F. Supp. 2d 58, 77 (D.D.C. 2000) (injunction appropriate where, among other factors, employee had no guarantee of ability to recoup backpay even if she prevailed in future proceeding); *Truck Drivers, Oil Drivers, Filling Station & Platform Workers, Local 705 v. Almarc Mfg., Inc.*, 553 F. Supp. 1170, 1172 (N.D. Ill. 1982) (harm was not speculative— grievance board had ordered reinstatement, employer was refusing to comply, and employees had been fired and were *currently* in default on their mortgages); *Gonzalez v. Chasen*, 506

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 16

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

F. Supp. 990, 999 (D.P.R. 1980) (distinguished from general *Sampson* rule because plaintiff demonstrated extraordinary circumstances warranting relief, including son with serious medical history who would be deprived of medical insurance, and "stigma" of dismissal as law enforcement officer, "an occupation peculiarly susceptible to such a stigma," would preclude finding alternative employment); *Lake Mich. Coll. Fed. of Teachers v. Lake Mich. Cmty. Coll.*, 390 F. Supp. 103 (W.D. Mich. 1974) (following *Aluminum Workers*); *Amalgamated Food Employees Union, Local No. 590 v. Nat'l Tea Co.*, 346 F. Supp. 875 (W.D. Penn. 1972) (employer closed 36 stores and was in process of liquidating inventory and selling stores— closings affected 700 employees and there were questions about applicability of bargaining agreement to successors and assigns).  The remaining case cited by AMPA, *Lake Mich. Coll. Fed. of Teachers v. Lake Mich. Cmty. Coll.*, 390 F. Supp. 103 (W.D. Mich. 1974), was effectively overruled in pertinent part by the Sixth Circuit's decision in *Aluminum Workers*.

Further weighing against injunctive relief in this case is the fact that the Union's potential harms are *highly* speculative, certainly more so than the alleged harms in *Aluminum Workers*, where the employees had already lost their jobs.  *Aluminum Workers*, 696 F.2d at 440.  As explained above, although the ten pilots have received notices of *potential* layoff pursuant to their rights under the WARN Act, none have actually been laid off.  The employees' positions have been eliminated, but—in keeping with its past practice—Boeing is diligently working to place all of these employees in alternative positions within the Company.  *See* Darcy-Hennemann Decl. ¶¶ 4-5.  One of the AMPA pilots has already been placed, two WARN notices will be extended (and possibly canceled) due to military leaves, one pilot is returning to active military service, and it is very likely that other pilots will be placed as well.  *Id.*

The speculative harms alleged by the Union are nothing more than the harms naturally flowing from unemployment, common to all discharged employees.  In light of the fact that Boeing is fully able to comply with a future award of backpay and reinstatement, these harms do not rise to the level of "irreparable harm" sufficient to warrant injunctive relief.

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 17

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

c.      **The Balance of Hardships Tips Strongly in Boeing's Favor**

Because the Union has failed to demonstrate irreparable harm, the Court is not required to consider the balance of the hardships. *See Aluminum Workers*, 696 F.2d at 444 ("Only in those cases where the party seeking relief can demonstrate irreparable harm, however, need a court go on to balance that harm against the harm to be suffered by the party against whom relief is sought.").  However, should the Court choose to balance the hardships in the present case, the scales tip heavily in favor of Boeing.

An injunction compelling expedited arbitration could cause Boeing substantial irreparable harm.  The grievance here raises fundamental questions about AMPA jurisdiction, management's right to assign work, the rights of non-AMPA employees, and related contract interpretation questions.  Kelly Decl. ¶ 6.  The final decision will likely have a lasting, precedential impact on the AMPA unit and future AMPA grievances, Boeing's customer-training operations, and the employment rights of non-AMPA employees.  *Id.*  This is, in short, *precisely* the kind of case that should be decided by a highly qualified arbitrator agreed to by the parties based on a complete factual record and written briefs.  It is also a case where a thoroughly reasoned written decision is essential.  *Id.*  For these reasons, expedited arbitration is particularly inappropriate in the present case and could cause Boeing substantial irreparable harm.

d.      **The Advancement of the Public Interest Strongly Militates Against an Injunction**

If the Court were to grant AMPA's motion, it would effectively rule that every WARN notice is grounds for a federal court injunction bypassing the parties' negotiated grievance and arbitration procedures.  As the court observed in *Aluminum Workers*:

> [T]o affirm the injunction in this case where the sole injuries alleged are the consequence of temporary unemployment would be to invite virtually every employee laid-off or discharged in a matter which arguably contravened the collective bargaining contract to resort to the courts to stay the onset of joblessness.  We cannot avoid the conclusion that such a situation would have as much, if not more, of a corrosive effect upon the arbitral process as [the employer's] actions allegedly will have here.  In the words of the

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 18

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

> Supreme Court, the prospect of such potentially widespread judicial involvement in the area of labor relations "would cut deeply into the policy of the Norris-LaGuardia Act and make the courts potential participants in a wide range of arbitrable disputes."

*Id.*, 696 F.2d at 444 (emphasis added) (*quoting Buffalo Forge Co.* 428 U.S. at 410-11). Such a result would also run counter to the strong public policy in favor of collective bargaining. If the Union believed that an expedited arbitration process was appropriate or necessary in certain situations, it was the *Union's responsibility* to pursue such a process *during collective bargaining*. It did not. Rather, it waited until after the contract was negotiated and then ran to the Court asking for a right *it never even proposed* during the parties' negotiations. The Court should not permit the Union to bypass the parties' negotiated grievance and arbitration procedures in contravention of the clear public policy favoring collective bargaining.

## IV.   CONCLUSION

The Union is not entitled to an injunction ordering expedited arbitration. An extra-contractual expedited arbitration process is not authorized by Section § 301 and is prohibited by Norris-LaGuardia. Even if expedited arbitration was an appropriate remedy, the Union has failed to satisfy the criteria for injunctive relief. The Union cannot establish that Boeing has refused to arbitrate the grievance at issue, and (2) the Union has failed to satisfy the traditional equitable criteria for injunctive relief: it has not established irreparable harm, the balance of hardships tips strongly in Boeing's favor, and granting an injunction would harm the public interest. For each of these reasons, the Union's motion for a preliminary injunction should be denied.

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 19

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

1
2   DATED:  June 15, 2009                    s/ Charles N. Eberhardt, WSBA No. 18019
3                                            CEberhardt@perkinscoie.com
4                                            Maralee M. Downey, WSBA No. 38239
5                                            MDowney@perkinscoie.com
6                                            **Perkins Coie LLP**
7                                            The PSE Building
8                                            10885 N.E. Fourth Street, Suite 700
9                                            Bellevue, WA  98004-5579
10                                           Telephone:  425.635.1400
11                                           Facsimile:  425.635.2400
12
13                                           Attorneys for Defendant
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO APPLICATION FOR TEMPORARY
RESTRAINING ORDER (No. C09-0772 MJP) – 20

03002-1565/LEGAL16341127.1

**Perkins Coie LLP**
The PSE Building
10885 N.E. Fourth Street, Suite 700
Bellevue, WA  98004-5579
Phone:  425.635.1400
Fax:  425.635.2400

**ARTICLE 7**
**GRIEVANCE AND ARBITRATION PROCEDURE**

**1.      Grievance and Arbitration Procedure**

Grievances arising between the Company and its employees subject to this Agreement, or between the Company and the Union, with respect to the interpretation or application of any of the terms of this Agreement, shall be settled according to the following procedure. The grievance procedures of this Agreement and the judicial and administrative remedies provided by law are the sole and exclusive means for settling any dispute between the employees and/or the Union and the Company dealing with the interpretation or application of terms of this Agreement.

**2.      Employee Grievances**

a.      Grievances on behalf of employees shall be handled as follows:

Step l.    Submission of Grievance to Supervisor. The employee and, at his or her option, a Union Representative shall contact the employee's manager and attempt to effect a settlement of the grievance. Such notification shall be made within 10 workdays following the occurrence of the event giving rise to the grievance or following the discovery of such event if during the period between the dates of occurrence and discovery the event was unknown to the affected Instructor Pilot and the Union and could not have been discovered upon reasonable diligence.

Step 2.    Submission of Grievance to Company Representative. If no settlement is reached, the Union Representative shall withdraw the grievance or immediately thereafter submit the grievance in writing to the designated Company Representative and attempt to effect a settlement.

Step 3.    Arbitration. If no settlement is reached in Step 2, the Union Representative shall either withdraw the grievance or promptly request, in writing, that the matter be submitted to an arbiter.

b.      Employees shall not be discharged or suspended without just cause. An employee shall have the right to appeal a layoff, discharge, suspension, or involuntary resignation by filing a written grievance through the Union, beginning at Step 2, with the designated Company Representative within ten (10) workdays after the date of such layoff, discharge, suspension, or involuntary resignation.

**3.      Union Versus Company and Company Versus Union**

Grievances that the Union may have against the Company, or the Company may have against the Union, shall be submitted in writing to the party's designated representative within ten (10) workdays following the occurrence of the event giving rise to the grievance or following the discovery of such event if during the period between the dates of occurrence and discovery the event was unknown to the grievant and could not have been discovered upon reasonable diligence. If no settlement is reached, the grieving party shall either withdraw the grievance or request in writing that the matter be submitted to an arbiter.

**4.      Selection of Arbiter**

Contemporaneously with execution of this Agreement, the parties will agree upon a panel of two arbiters. Selection of an arbiter to hear a particular case shall be made from the panel on a rotating, alphabetical basis. Nothing in this article shall preclude the parties from mutually agreeing on an arbiter to hear and decide a particular case.

**5.      Arbitration – Rules of Procedure**

Arbitration proceedings shall be in accordance with the following:

a.      The arbiter shall hear and accept pertinent evidence submitted by both parties and shall be empowered to request such data as the arbiter deems pertinent to the grievance. The arbiter shall render a decision in writing to both parties within sixty (60) days (unless mutually extended) of the completion of the hearing.

b.      The arbiter shall be authorized to rule and issue a decision in writing on the issue presented for arbitration that shall be final and binding on both parties.

c.      The arbiter shall rule only on the basis of information presented in the hearing unless, in the arbiter's judgment, the hearing should be reopened to receive additional information from one or both parties.

d.      Each party to the proceedings may call such witnesses as may be necessary in the order in which their testimony is to be heard. The arguments of the parties may be supported by oral comment and rebuttal. Either or both parties may submit written briefs within a time period mutually agreed upon. Such arguments of the parties, whether oral or written, shall be confined to and directed at the matters raised at the hearing.

e.      Each party shall pay any compensation and expenses relating to its own witnesses or representatives.

f.      The Company and the Union shall, by mutual consent, fix the amount of compensation to be paid for the services of the arbiter. The Union or the Company, whichever is ruled against by the arbiter, shall pay the compensation and expenses of the arbiter.

g.      The total cost of the stenographic record, if requested, will be paid by the party requesting it. If the other party also requests a copy, that party will pay one-half of the stenographic costs.

**6.      Binding Effect of Award**

All decisions arrived at under the provisions of this article by the representatives of the Company and the Union, or by the arbiter, shall be final and binding upon both parties and involved employees, provided that in arriving at such decisions neither of the parties nor the arbiter shall have the authority to alter this Agreement in whole or in part.

**7.      Time Limitation as to Back Pay**

Grievance claims regarding retroactive compensation shall be limited to thirty (30) calendar days prior to the written submission of the grievance to Company Representatives, provided, however, that this thirty (30)-day limitation may be waived by mutual consent of the parties. The limitation period will be extended to cover a period of time if during that period facts justifying the filing of a grievance were unknown to the affected Instructor Pilot and the Union and could not have been discovered upon reasonable diligence.

**8.      Extension of Time Limits by Agreement**

The time limits set forth in this article are recognized by the parties as being necessary for prompt resolution of grievances. Reasonable extensions of these time limits may be arranged by mutual written agreement. Grievances not presented, or presented and not pursued, within the specified or mutually extended time limits will be considered waived, and such failure shall constitute a bar to all future actions thereon.

**9.      Signing Grievance Does Not Concede Arbitrable Issue**

The signing of any grievance by any employee or representative of either the Company or the Union shall not be construed by either party as a concession or agreement that the grievance is timely, constitutes an arbitrable issue, or is properly subject to the grievance procedure under the terms of this article.