UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIRPLANE MANUFACTURING PILOTS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>Defendant. | Case No. C09-0772 MJP<br><br>ORDER ON MOTION FOR A TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff's application for a temporary restraining order and memorandum in support thereof. (Dkt. Nos. 5, 6 (as amended 22).) The Court has considered the memorandum, the response (Dkt. No. 24), the reply (Dkt. No. 32), the documents submitted in support of the briefing, and the parties' presentations at oral argument on June 18, 2009. For the reasons set forth below, the Court DENIES Plaintiff's motion.

**Background**

Plaintiff American Manufacturing Pilots Association ("AMPA") represents ten instructor pilots employed by Boeing who have received notices they will lose their jobs on July 24, 2009. (Dkt. No. 6 at 4-5.) Defendant Boeing operates Boeing Commercial Airplanes ("BCA") and employs 50 instructor pilots represented by the AMPA at its Longacres site in Renton, Washington. (Wright Decl. ¶ 2.) On March 19, 2009, the two parties entered into a

ORDER - 1

collective bargaining agreement ("CBA") that, among other provisions, includes a grievance and arbitration procedure. (Canova Decl., Ex. A.)

Two Articles of the CBA are relevant for the purposes of this motion: First, Article 3 states that Boeing may hire non-AMPA "simulator-only" instructors, but "no Instructor Pilot … shall be laid off as a result thereof." (Id., Art. III, § 4.) Second, Article 7 differentiates between grievances filed by employees and grievances filed by the union itself. (Id., Art. VII, §§ 2-3.) Employees may file grievances "within ten (10) workdays after the date of" any layoff. (Id. § 2.) The section related to union grievances refers to "the event giving rise to the grievance" without reference to a layoff as a predicate for a grievance. (Id. § 3)

On May 11, 2009, AMPA learned of Boeing's intention to lay off ten union members and on May 22, 2009, those pilots received WARN notices informing them they would lose their jobs on July 24, 2009. (Canova Decl. ¶ 7.) AMPA claims these terminations will take place even though "simulator only instructors will continue to be hired by and employed by Boeing." (Id. ¶ 9.) On May 18, Plaintiff's counsel sent a grievance letter to Labor and Employment section of Boeing's Office of the General Counsel claiming "the proximate cause of these layoffs is the continued employment by Boeing . . . of simulator-only instructors at Longacres" and requesting the matter be referred to an arbiter under the CBA. (Iglitzen Decl., Ex. 1.) On May 28, Boeing responded indicating its belief that "[b]ecause no layoffs of AMPA-represented employees have occurred, there has been no event that would precipitate a grievance." (Id., Ex. 2 (further noting employees could file a grievance upon termination).) On June 2, AMPA requested an "expedited arbitration process and, on June 3, Boeing repeated its belief that the grievance was premature. (Id., Ex. 3, 4.) Plaintiffs filed their complaint in this matter on June 3, 2009 pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Compl. ¶ 1.3.) On June 8, Plaintiff filed the present motion.

**Discussion**

I.  Jurisdiction and Legal Standard

The Norris-LaGuardia Act, 29 U.S.C. §§ 101, *et seq.*, generally limits a district court's power to issue injunctions in disputes between a union and an employer. In <u>Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, the Supreme Court recognized an exception to the Act's anti-injunction provisions and allowed equitable relief to prevent a union from going on strike over a dispute that was subject to a binding arbitration process. 398 U.S. 235, 253 (1970) (injunctive relief can support the central purpose of the Norris-LaGuardia Act when it "merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration"); <u>see</u> <u>also</u> <u>Buffalo Forge Co. v. United Steelworkers of America</u>, 428 U.S. 397, 407 (1976) ("The driving force behind <u>Boys Markets</u> was to implement the strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties."). Courts have also found injunctive relief to be appropriate in so-called "reverse <u>Boys Markets</u>" instances where "an employer makes changes in areas which are subject to the grievance-arbitration procedure, and the union seeks to enjoin the employer from making the changes until the grievance is resolved through arbitration." <u>Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency</u>, 89 F.3d 629, 632 (9th Cir. 1996).

Under the reverse <u>Boys Markets</u> exception, courts have found injunctive relief available where:

> (1) the collective bargaining agreement contains a mandatory arbitration provision; (2) the underlying dispute is arbitrable; (3) the party seeking arbitration is prepared to arbitrate; and (4) issuance of an injunction would be warranted under ordinary principles of equity-whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

<u>Id.</u> at 632.

II. Scope of the Court's Injunctive Powers

Boeing objects to AMPA's proposed injunction because the requested remedy is not articulated in the contract. (Dkt. No. 24 at 10-11.) In general, the Court's injunctive power exists for "for the purpose of enforcing collective-bargaining agreements." Buffalo Forge, 428 U.S. at 409 (citations omitted); see also Otis Elevator Co. v. Int'l Union of Elevator Constructors, 408 F.3d 1, 9 (1st Cir. 2005) (district court "exceeded its discretion by requiring the parties to submit to an arbitration regime different from what was contractually bargained for … in doing so, [the court] contravened the policies promoted by Boys Markets …").

In its second demand letter to Boeing and in its present motion, AMPA requests an "expedited arbitration process to be conducted pursuant to the expedited arbitration rules of the American Arbitration Association" such that a decision could be reached before the scheduled terminations. (Iglitzen Decl., Ex. 3; see also Dkt. No. 6 at 22.) The contract, however, is silent on the issue of expedited arbitration. (See Canova Decl., Ex. A.) The only time-sensitive provision in the CBA's agreed upon rules of procedure state that an arbiter must render a decision within sixty days of the close of any hearing. (Id.) AMPA argues that there is nothing about the requested injunction "that is inconsistent with any of [the] contractual provisions." (Dkt. No. 32 at 5.) Inconsistency is not the only bar to injunctive relief under Boys Markets. In the Court's view, the requested injunction would be inappropriate because it would impose an arbitration procedure fundamentally different from the agreed upon provisions of the CBA. See Otis Elevator, 408 F.3d at 9.

III. Irreparable Harm

Even if the Court could grant AMPA's requested injunction under a reverse Boys Markets scenario, it would be inappropriate to do so because AMPA has not demonstrated that they will suffer irreparable harm in the absence of expedited arbitration. In the context of a labor dispute like this, an irreparable injury is "not simply an injury resulting from a breach of contract that would not be fully redressed by an arbital award, but rather injury so

ORDER - 4

irreparable that a decision of the (arbitration) board in the union's favor would be but an empty victory." American Postal Worker's Union v. U.S. Postal Service, 372 F. Supp. 2d 83, 91 (D.D.C. 2005) (internal quotations omitted) (quoting Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp., 668 F.2d 276, 285-86 (7th Cir. 1981)). The Ninth Circuit has cited approvingly the Second Circuit's conclusion that "[t]he arbitration process is rendered meaningless only if any arbital award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction." Local 921, 89 F.3d at 634 (quoting Niagara Hooker Employees Union v. Occidental Chemical Corp., 935 F.2d 1370, 1378 (2d Cir. 1991)) (further noting the standard "guards against undue judicial interference with the employer's ability to make business decisions"); see also American Postal Workers Union, 372 F. Supp. 2d at 91 (irreparable harm existed where union's sought-after remedy would not be available after a certain date).

The Supreme Court has stated "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury." Sampson v. Murray, 415 U.S. 61, 92 n.68 (1974). Plaintiff claims its members will suffer irreparable harm because (1) pilots may have to relocate overseas or reenlist in the military to find alternative employment, (Dkt. No. 6 at 15 (citing Reed Decl., Denton Decl., Brown Decl.)); (2) there are direct and collateral effects of a primary breadwinner losing employment, (Id. at 16-17 (citing Wendt Decl., Sullivan Decl.)); (3) pilots will be unable to afford private school for their children, (Id. at 17-18 (citing Chapman Decl., Westcott Decl.)); and (4) pilots will be deprived of their chosen career path, (Id. at 18 (citing Coleman Decl.)).

While the Court recognizes that these are serious consequences, they are the types of injuries that backpay and reinstatement are designed to remedy. AMPA's injuries are not in any way unique to the manner of the discharge itself. See Sampson, 415 U.S. at 92 n.68. In

addition, none of AMPA's arguments indicate that the arbitration process will be undermined by the union members' termination. Unlike the scenario in American Postal Workers Union, where the sought-after remedy would not be available after a certain date, the union members here do not argue Boeing will be unable to reinstate or reimburse the pilots should they prevail at arbitration. 372 F. Supp. 2d at 91. Neither party suggests that Boeing will fundamentally restructure BCA such that an AMPA victory at arbitration would produce an "empty victory." The Court finds that AMPA will not suffer the type of harm that would eviscerate the arbitration process and render any award meaningless.

### Conclusion

While the Court recognizes the difficulties present in any situation involving layoffs, AMPA has not demonstrated that the requested injunctive relief is appropriate. First, the relief requested is unavailable under Boys Markets or its progeny because it proposes a form of arbitration that the parties have not agreed upon. Second, AMPA has not demonstrated the type of irreparable injury that could not be remedied by a favorable arbitration award. The Court therefore DENIES Plaintiff's application for a temporary restraining order compelling expedited arbitration.

The Clerk is directed to send a copy of this order to all counsel of record.

DATED this 22nd day of June, 2009.

_____
Marsha J. Pechman
United States District Judge